IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| UNITED STATES OF AMERICA | ) | CRM. NO. __3:15-75__ |
|---|---|---|
| | ) | |
| v. | ) | 18 U.S.C. § 1623(a) |
| | ) | 18 U.S.C. § 1623(c) |
| JASON AMODIO | ) | |
| | ) | **INFORMATION** |
| | ) | |

## COUNT 1

THE UNITED STATES ATTORNEY CHARGES:

1. That on or about October 16, 2012, in the District of South Carolina, the defendant, **JASON AMODIO**, while under oath and testifying before Grand Jury Number Three, a federal grand jury of the United States District Court, District of South Carolina, knowingly did make materially false declarations.

2. At the time and place aforesaid, the grand jury was conducting an investigation into possible violations of law including operation of illegal gambling businesses, extortion under color of law, honest services mail and wire fraud and related matters to identify the persons who had committed, potentially committed, caused the commission of, and conspired to commit such violations. It was material to the said

1

investigation that the grand jury ascertain, among other things, the credibility of **JASON AMODIO,** whether **JASON AMODIO** was involved in the payment and receipt of bribes and kickbacks, the specific nature of the relationship between **JASON AMODIO** and an individual (Person A) and the reason for an exchange of money between **JASON AMODIO** and Person A in 2011 and 2012.

3.  At the time and place alleged, **JASON AMODIO**, appearing as a witness under oath at a proceeding before the grand jury, knowingly made the following declaration in response to questions with respect to the material matters alleged herein above as follows:

> Q: Has he ever borrowed money from you or have you ever borrowed money from him, anything of that nature?
>
> A: I have borrowed money from him before.
>
> Q: You've borrowed money from him.
>
> A: Yes, sir.
>
> Q: When did you borrow money from him?
>
> A: Probably six or eight months ago.
>
> Q: And why did you borrow money from him?
>
> A: I had a truck that was – my truck – and I found another truck, I wanted a diesel dually. I didn't have the cash but I had somebody that was going to buy my truck, so I was like in between a couple days, so I had somebody that was going to purchase my truck, I was going to take that money and buy this other truck, but he wasn't

      able to buy that truck yet for a couple of days, so he loaned me the money to go get this truck and as soon as I sold mine, I paid him back. And I did it in writing.

Q: So tell me about that. Did you all have any - some sort of loan agreement?

A: Yes, sir.

Q: Okay, you did?

A: Yes, sir.

Q: Okay. And how much money did he loan you?

A: Nine thousand dollars.

Q: Okay. And - and what date, how quickly did you pay him back?

A: Within a week.

Q: You didn't tell the agents about that either, did you?

A: No, sir.

Q: Why not?

A: Well, again, they didn't ask me about that.

Q: Well, you did know the agents were asking you questions about Person A and how he made his money and whether he was making money perhaps living beyond his means with video poker and you didn't bother to tell them about that either, did you?

A: As far as the loan?

Q: Uh-huh.

A: No, sir, I did not.

3

Q: Okay. Well, so this check that I have, Grand Jury Exhibit Number 1 – JA 10/16 which is today's date, is that the check that Person A made out to you?

A: Yes, sir, it is.

Q: Okay. Now why is Person B's signature on that check as well as your own?

A: Because she cashed it for me.

Q: So why did she cash a check for you and give you cash?

A: Because I was buying my truck through Craig's List and you can't pay anything but really with cash, so that's what I did. I paid for it in cash.

Q: How did you know that Person A had the financial wherewithal to write you a check for $9,000?

A: I – honestly I didn't.  I asked him and he said he did, so I know he's – he has a construction business with his brother and they own a lot of hospital buildings up and down 378 . . .

Q: You didn't tell the agents about any of that either, did you?

A: I thought that was common knowledge.

Q: You thought that was common knowledge, and so that's the reason why you didn't tell the agents because you thought that was common knowledge?  Now what day did you pay this back?

A: I don't know exactly.  I mean . . .

Q: You said within a couple of days; right?

A: Within . . .

Q: So did you write a check out to Person A?

A: No, sir. I - I sold my truck in cash and I gave him the cash back.

4. The aforesaid testimony of the defendant, **JASON AMODIO**, as he then and there well knew and believed, was false.

All in violation of Title 18, United States Code, Sections 1623(a) and 1623(c).

███████████████
WILLIAM N. NETTLES    (jnr)
UNITED STATES ATTORNEY

2/6/15

Columbia, South Carolina